NB:MRM
F. #2017R00376

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – –X

IN THE MATTER OF AN APPLICATION
FOR A SEARCH WARRANT FOR:

THE PERSON KNOWN AND
DESCRIBED AS TYSAAN
ROBINSON, DATE OF BIRTH
August 11, 1991, INMATE
NUMBER 90345-053

– – – – – – – – – – – – – – – – – –X

AFFIDAVIT IN SUPPORT
OF APPLICATION FOR A
SEARCH WARRANT

(Fed. R. Crim. P. 41; T. 18,
U.S.C., § 922(g)(1) and 924(a)(2))



MJ 19– 245

EASTERN DISTRICT OF NEW YORK, SS:

Derrick K. Acker, being duly sworn, deposes and states that he is a Special

Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as

such.

Upon information and belief, there is probable cause to believe that evidence of

violations of Title 18, United States Code, Sections 1959(a)(3) and 1959(a)(5)– specifically,

that, on or about March 11, 2016, TYSAAN ROBINSON date of birth August 11, 1991 and

Inmate number 90345-053, did knowingly and intentionally attempt to murder and assault

another with a dangerous weapon for the purpose of maintaining or increasing his position in

the Bloods, a racketeering enterprise– will be obtained by the taking, and preserving as

evidence, of a buccal swab sample or blood sample of the defendant.[1]

---

[1]     Some of the courts that have addressed the issue have found that obtaining DNA via
saliva is subject to the protections of the Fourth Amendment.  See United States v. Nicolosi, 885
F. Supp. 50, 51-56 (E.D.N.Y. 1995) (Glasser, J.); In re Shabazz, 200 F. Supp. 2d 578, 581-85
(D.S.C. 2002).   But see United States v. Owens, 2006 WL 3725547, at *6-17 (W.D.N.Y. Dec.
15, 2006) (finding probable cause not necessary for a saliva sample for DNA from an inmate); In

The source for your deponent's information and the grounds for his belief are as follows:[2]

1.       I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been a Special Agent with Federal Bureau of Investigation ("FBI") for approximately 23 years. I have participated in many investigations of gangs, narcotics trafficking and related violent crimes. In the course of those investigations, I have conducted physical surveillance, monitored undercover operations, debriefed cooperating witnesses and confidential informants, monitored wiretaps, and interviewed civilian witnesses. The facts set forth in this affidavit are based upon my own investigation of the facts and upon what I have learned from other individuals who have participated in the investigation. Additionally, any statements attributable to individuals herein are set forth in sum and substance and in part.

2.       I have been involved in an investigation of the defendant related to the aforementioned criminal activity as well as of other members of the criminal enterprise known as the Bloods who were operating in and around Roosevelt, New York.

3.       On March 11, 2016, an individual named Maliq Stevenson, who was a member of the Rollin' 60s Crips, a rival criminal organization of the Bloods in Roosevelt, New York, was shot numerous times at close range while walking on Horace

---

re Vickers, 38 F. Supp. 2d 159, 165-68. (D.N.H. 1998) (permitting saliva sample by grand jury subpoena).

[2]       Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause to search, I have not set forth all of the facts and circumstances relevant to this investigation.

Avenue, Roosevelt, New York. Surveillance video from a residence in the vicinity captured the shooting. The video shows a short, slim build male (the "subject") walking on the opposite side of the street from Stevenson. The subject pulls out a firearm and begins shooting at Stevenson, who flees and collapses in a nearby driveway. The subject then pursues Stevenson, stands over Stevenson and fires additional shots at Stevenson as he lay on the ground. Stevenson was struck several times and survived his wounds.

4. Following the shooting, members of the Nassau County Police Department Crime Scene Search Unit responded to the scene of the shooting on Horace Avenue and recovered ten (10) forty caliber shell casings (the "SUBJECT CASINGS"). The SUBJECT CASINGS were submitted to the Nassau County Office of the Medical Examiner ("NCOME") for forensic testing.

5. During the course of the investigation into the shooting and other crimes committed by the Bloods in Roosevelt, New York, law enforcement began meeting with a cooperating witness (hereinafter "CW").[3] CW was a member of the Bloods gang in Roosevelt, New York. CW has informed law enforcement that CW had a conversation with TYSAAN ROBINSON following the March 11, 2016 shooting of Stevenson and in that conversation TYSAAN ROBINSON told CW that he had shot Stevenson. CW has informed law enforcement that the members of the Bloods maintained firearms that were available to the various members of the gang to use when committing crimes.

---

[3] CW pleaded guilty pursuant to a cooperation agreement and agreed to cooperate with the government. CW has proven to be reliable as information provided by them has been corroborated by other sources, including other cooperating witnesses, ballistics evidence, photographs, surveillance by law enforcement officers, wiretap recordings and other witnesses.

Furthermore, CW has informed law enforcement that the .40 caliber firearm that

TYSAAN ROBINSON used to shoot Stevenson was the same .40 caliber firearm that

another Bloods member, Jermaine Green, used in an April 30, 2016 attempted murder and

the same .40 caliber firearm that yet another Bloods member, Cornell Brown, was in

possession of at the time of his arrest for an attempted robbery in December of 2016.

Indeed, ballistics examination of the firearm recovered from Brown, the SUBJECT

CASINGS and shell casings recovered from the April 30, 2016 attempted murder

determined that both sets of shell casings were fired from the .40 caliber recovered from

Brown.

6.      On or about August 8, 2017, a grand jury sitting the Eastern District

of New York returned an indictment charging TYSAAN ROBINSON with, amongst other

charges, attempted murder and assault in aid of racketeering, in violation of Title 18,

United States Code, Sections 1959(a)(3) and 1959(a)(5) for his role in the March 11, 2016

shooting of Stevenson (17-CR-106 (S-1) (JFB)).  The indictment is attached hereto as

Exhibit A and incorporated fully herein.  TYSAAN ROBINSON, who was in state

custody, was brought into federal custody and arraigned upon the indictment on August

14, 2017.

7.      I have been informed by members of the Nassau County Police

Department that the SUBJECT CASINGS were found to contain a mixture of DNA,

which mixture was made by a minimum of three people.  The NCOME has informed

members of law enforcement that if it were to obtain a DNA sample from a suspect,

additional testing may be done in an attempt to determine if the suspect's DNA

contributed to the mixture.

4

8.      Indeed, the NCOME has issued a report in which NCOME advises that it requires a DNA sample obtained directly from the suspect (e.g., a buccal swab) in order to obtain the DNA necessary to perform the additional DNA analysis.  The report is attached hereto as Exhibit B.

9.      Based on the above information, there is probable cause to believe that the defendant TYSAAN ROBINSON is a contributor to DNA mixture found on the SUBJECT CASINGS.   Therefore, there is probable cause to believe that a buccal swab or sample of their blood would constitute evidence of the defendant's commission of the charged crimes.

10.     On March 20, 2019, at approximately 1:05 p.m., TYSAAN ROBINSON's attorney, Joseph F. Ferrante, Esq., informed the United States Attorney's Office that ROBINSON consents to the issuance of this search warrant.

WHEREFORE, your deponent requests that a search warrant be issued authorizing FBI Special Agents, NCPD officers, United States Marshals and other appropriate law enforcement and support personnel to seize and obtain from the defendant TYSAAN ROBINSON a buccal swab sample or sample of blood.   The DNA samples sought herein will be collected by buccal swabbing.  This method involves taking a sterile swab (similar to a Q-Tip) and gently scrubbing the inside right cheek, then the inside left cheek, for approximately five to ten seconds.   An appropriately trained law enforcement officer, or an appropriately trained designee, will perform the cheek swabbing.  Two samples are requested in the event that one of the samples becomes contaminated or otherwise cannot be tested.   The samples seized will be subsequently submitted to a forensic laboratory for examination and will be subject to examination, testing and analysis.  In the event that

5

ROBINSON refuses to submit to a cheek swab, the government will notify the court and

submit a further application seeking to draw a sample of ROBINSON's blood.

Derrick K. Acker
Special Agent
Federal Bureau of Investigation

Sworn to before me this
__ day of March, 2019

/s/ GARY R. BROWN

THE HONORABLE GARY R. BROWN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

# **EXHIBIT A**

NB:MRM
F.#2017R00376

RECEIVED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   AUG - 8 2017   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

— — — — — — — — — — — — — — — — X

UNITED STATES OF AMERICA

     - against -

ALLAZEEM CARTER
     also known as "Green" and "Money,"
JERMAINE GREEN,
     also known as "730,"
JOHNNY GREEN,
     also known as "Snacks,"
TYSHAWN JACKSON,
     also known as "Dollas" and "Ty Dollas,"
DONALDSON JOSEPH,
     also known as "Tweez,"
TYSAAN ROBINSON,
     also known as "Cream," and
DAQUAN WAGNER,
     also known as "Studda B,"

         Defendants.

— — — — — — — — — — — — — — — — X

**SUPERSEDING**
**INDICTMENT**

Cr. No. <u>17-106 (S-1) (JFB)</u>
(T. 18, U.S.C., §§ 924(c)(1)(A)(i),
924(c)(1)(A)(ii), 924(c)(1)(A)(iii),
924(c)(1)(C)(i), 1951(a), 1959(a)(3),
1959(a)(5), 1959(a)(6), 1962(c), 1962(d),
1963, 2 and 3551 <u>et</u> <u>seq</u>; T. 21, U.S.C., §§
841(b)(1)(A)(iii), 841(b)(1)(C) and 846)

THE GRAND JURY CHARGES:

<u>INTRODUCTION</u>

     At all times relevant to this Superseding Indictment, unless otherwise indicated:

<u>The Enterprise</u>

     1.     The Bloods (hereinafter the "Bloods" or the "enterprise") was a violent street gang with members located throughout Long Island, New York, and elsewhere.

Members and associates of the Bloods have engaged in acts of violence, including murder,
attempted murder, robbery and assault, as well as other criminal activity, including narcotics
trafficking. Participation by a member or an associate in criminal activity, especially
violence directed at rival gangs, increased the respect accorded to that member or associate
and could result in gaining entrance to the Bloods or a promotion to a leadership position.
Members of the Bloods purchased, maintained and circulated a collection of firearms for use
in criminal activity. The Crips was a rival street gang of the Bloods.

2. The defendants ALLAZEEM CARTER, also known as "Green" and
"Money," JERMAINE GREEN, also known as "730," TYSHAWN JACKSON, also known
as "Dollas" and "Ty Dollas," TYSAAN ROBINSON, also known as "Cream," and
DAQUAN WAGNER, also known as "Studda B," were members of the Bloods. The
defendant JOHNNY GREEN, also known as "Snacks," was an associate of the Bloods.

3. The Bloods, including its leadership, membership and associates,
constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4),
that is, a group of individuals associated in fact, which was engaged in, and the activities
of which affected, interstate and foreign commerce. The enterprise constituted an ongoing
organization whose members functioned as a continuing unit for a common purpose of
achieving the objectives of the enterprise.

4. The Bloods routinely held meetings to, among other things, plan
criminal activity. The Bloods would provide money to purchase firearms and to assist
members who had been arrested. Members of the Bloods sometimes signified their
membership and allegiance to the gang by wearing the color red, wearing tattoos and
displaying special hand signals.

2

## Purposes of the Enterprise

5.     The purposes of the enterprise included the following:

a.     Promoting and enhancing the prestige, reputation and position of the enterprise with respect to rival criminal organizations.

b.     Preserving and protecting the power, territory and criminal ventures of the enterprise through the use of intimidation, threats of violence and acts of violence, including assault and murder.

c.     Keeping victims and rivals in fear of the enterprise and its members and associates.

d.     Enriching the members and associates of the enterprise through criminal activity, including robbery and drug trafficking.

e.     Ensuring discipline within the enterprise and compliance with the enterprise's rules by members and associates through threats of violence and acts of violence.

## Means and Methods of the Enterprise

6.     Among the means and methods by which the defendants and their associates conducted and participated in the conduct of the affairs of the enterprise were the following:

a.     Members of the Bloods and their associates committed, attempted to commit and threatened to commit acts of violence, including murder, robbery and assault, to enhance the enterprise's prestige and protect and expand the enterprise's criminal operations.

3

b.      Members of the Bloods and their associates used and threatened to use physical violence against various individuals, including members of rival criminal organizations and Bloods members who violated the enterprise's rules.

c.      Members of the enterprise and their associates used, attempted to use and conspired to use robbery and drug trafficking as means of obtaining money.

## COUNT ONE
(Racketeering)

7.      The allegations contained in paragraphs one through six are realleged and incorporated as if fully set forth in this paragraph.

8.      On or about and between January 1, 2008 and the date of this Superseding Indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ALLAZEEM CARTER, also known as "Green" and "Money," JERMAINE GREEN, also known as "730," JOHNNY GREEN, also known as "Snacks," TYSHAWN JACKSON, also known as "Dollas" and "Ty Dollas," TYSAAN ROBINSON, also known as "Cream," and DAQUAN WAGNER, also known as "Studda B," together with others, being persons employed by and associated with the Bloods, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conduct and participate, directly and indirectly, in the conduct of the affairs of the Bloods through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below.

4

## RACKETEERING ACT ONE
(Conspiracy to Murder Rival Gang Members)

9.      In or about and between January 2008 and the date of this Superseding Indictment, both dates being approximate and inclusive, within the Eastern District of New York, the defendants ALLAZEEM CARTER, JERMAINE GREEN, JOHNNY GREEN, TYSAAN ROBINSON and DAQUAN WAGNER, together with others, did knowingly and intentionally conspire to cause the death of members and associates of rival gangs, including the Crips, in violation of New York Penal Law Sections 125.25(1) and 105.15.

## RACKETEERING ACT TWO
(Conspiracy to Distribute Controlled Substances)

10.      On or about and between January 1, 2014 and the date of this Superseding Indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ALLAZEEM CARTER, JOHNNY GREEN, TYSHAWN JACKSON and TYSAAN ROBINSON, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute one or more controlled substances, which offense involved (a) a substance containing cocaine base, a Schedule II controlled substance, (b) a substance containing heroin, a Schedule I controlled substance, and (c) a substance containing marijuana, a Schedule I controlled substance, contrary to Title 21, United States Code, Section 841(a)(1), in violation of Title 21, United States Code, Section 846.

5

### RACKETEERING ACT THREE
(Attempted Murder of John Doe #1)

11.     On or about November 16, 2015, within the Eastern District of New

York, the defendant JERMAINE GREEN, together with others, did knowingly and

intentionally attempt to cause the death of another person, to wit:  John Doe #1, an individual

whose identity is known to the Grand Jury, in violation of New York Penal Law Sections

125.25(1), 110.00 and 20.00.

### RACKETEERING ACT FOUR
(Attempted Murder of John Doe #2)

12.     On or about March 11, 2016, within the Eastern District of New York,

the defendant TYSAAN ROBINSON, together with others, did knowingly and intentionally

attempt to cause the death of another person, to wit: John Doe #2, an individual whose

identity is known to the Grand Jury, in violation of New York Penal Law Sections 125.25(1),

110.00 and 20.00.

### RACKETEERING ACT FIVE
(Attempted Murder of John Doe #3)

13.     On or about April 30, 2016, within the Eastern District of New York,

the defendants JERMAINE GREEN and TYSAAN ROBINSON, together with others, did

knowingly and intentionally attempt to cause the death of another person, to wit: John Doe

#3, an individual whose identity is known to the Grand Jury, in violation of New York Penal

Law Sections 125.25(1), 110.00 and 20.00.

6

### RACKETEERING ACT SIX
(Attempted Robbery)

14.     The defendants ALLAZEEM CARTER, TYSHAWN JACKSON and DAQUAN WAGNER, together with others, committed the following acts, either of which alone constitutes Racketeering Act Six:

A.     Attempted Robbery

15.     On or about December 5, 2016, within the Eastern District of New York, the defendants ALLAZEEM CARTER, TYSHAWN JACKSON and DAQUAN WAGNER, together with others, did knowingly and intentionally attempt to forcibly steal property from a drug dealer in Uniondale, New York ("Drug Dealer #1"), in violation of New York Penal Law Sections 160.05, 110.00 and 20.00.

B.     Attempted Hobbs Act Robbery

16.     On or about December 5, 2016, within the Eastern District of New York, the defendants ALLAZEEM CARTER, TYSHAWN JACKSON and DAQUAN WAGNER, together with others, did knowingly and intentionally attempt to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: the attempted robbery of Drug Dealer #1 in Uniondale, New York, through the use of actual and threatened force, physical violence and fear of injury to such person, in violation of Title 18, United States Code, Section 1951(a).

(Title 18, United States Code, Sections 1962(c), 1963 and 3551 et seq.)

7

<u>COUNT TWO</u>
(Racketeering Conspiracy)

17.    The allegations contained in paragraphs one through six are realleged and incorporated as if fully set forth in this paragraph.

18.    On or about and between January 1, 2008 and the date of this Superseding Indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ALLAZEEM CARTER, also known as "Green" and "Money," JERMAINE GREEN, also known as "730," JOHNNY GREEN, also known as "Snacks," TYSHAWN JACKSON, also known as "Dollas" and "Ty Dollas," TYSAAN ROBINSON, also known as "Cream," and DAQUAN WAGNER, also known as "Studda B," together with others, being persons employed by and associated with the Bloods, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5).

19.    The pattern of racketeering activity through which the defendants ALLAZEEM CARTER, also known as "Green" and "Money," JERMAINE GREEN, also known as "730," JOHNNY GREEN, also known as "Snacks," TYSHAWN JACKSON, also known as "Dollas" and "Ty Dollas," TYSAAN ROBINSON, also known as "Cream," and DAQUAN WAGNER, also known as "Studda B," together with others, agreed to conduct the affairs of the enterprise consisted of the racketeering acts set forth in paragraphs nine through sixteen of Count One of this Superseding Indictment, as Racketeering Acts One

8

through Six, which are realleged and incorporated as if fully set forth in this paragraph. Each

defendant agreed that a conspirator would commit at least two acts of racketeering in the

conduct of the affairs of the enterprise.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

### COUNT THREE
(Attempted Murder and Attempted Assault with a Dangerous Weapon of John Doe #1)

20.     At all times relevant to this Superseding Indictment, the Bloods, as

more fully described in paragraphs one through six, which are realleged and incorporated as

if fully set forth in this paragraph, including its leadership, membership and associates,

constituted an "enterprise," as defined in Title 18, United States Code, Section 1959(b)(2),

that is, a group of individuals associated in fact that was engaged in, and the activities of

which affected, interstate and foreign commerce. The enterprise constituted an ongoing

organization whose members functioned as a continuing unit for a common purpose of

achieving the objectives of the enterprise.

21.     At all times relevant to this Superseding Indictment, the Bloods,

through its members and associates, engaged in racketeering activity, as defined in Title

18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts and threats

involving murder and robbery, that are chargeable under New York Penal Law and

punishable by imprisonment of more than one year; acts indictable under Title 18, United

States Code, Section 1951(a) (robbery); and offenses involving narcotics trafficking,

punishable under Title 21, United States Code, Sections 841 and 846.

22.     On or about November 16, 2015, within the Eastern District of New

York, the defendant JERMAINE GREEN, also known as "730," together with others, for the

9

purpose of maintaining and increasing position in the Bloods, an enterprise engaged in

racketeering activity, did knowingly and intentionally attempt to murder and assault with a

dangerous weapon, to wit: a firearm, John Doe #1, in violation of New York Penal Law

Sections 125.25(1), 120.05(2), 110.00 and 20.00.

(Title 18, United States Code, Sections 1959(a)(5), 1959(a)(6), 2 and

3551 et seq.)

## COUNT FOUR
(Discharging a Firearm During Crimes of Violence:
Attempted Murder and Attempted Assault with a Dangerous Weapon of John Doe #1)

23.     On or about November 16, 2015, within the Eastern District of New

York, the defendant JERMAINE GREEN, also known as "730," together with others, did

knowingly and intentionally use and carry a firearm during and in relation to one or more

crimes of violence, to wit: the crimes charged in Count Three, and did knowingly and

intentionally possess said firearm in furtherance of such crimes of violence, which firearm

was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii),

924(c)(1)(A)(iii), 2 and 3551 et seq.)

## COUNT FIVE
(Attempted Murder of a Rival Gang Member: Shooting of John Doe #2)

24.     The allegations contained in paragraphs 20 and 21 are realleged and

incorporated as if fully set forth in this paragraph.

25.     On or about March 11, 2016, within the Eastern District of New York,

the defendant TYSAAN ROBINSON, also known as "Cream," together with others, for the

10

purpose of maintaining and increasing position in the Bloods, an enterprise engaged in

racketeering activity, did knowingly and intentionally attempt to murder John Doe #2, in

violation of New York Penal Law Sections 125.25(1), 110.00 and 20.00.

(Title 18, United States Code, Sections 1959(a)(5), 2 and 3551 et seq.)

## COUNT SIX
(Assault of a Rival Gang Member with a Dangerous Weapon: Shooting of John Doe #2)

26.     The allegations contained in paragraphs 20 and 21 are realleged and

incorporated as if fully set forth in this paragraph.

27.     On or about March 11, 2016, within the Eastern District of New York,

the defendant TYSAAN ROBINSON, also known as "Cream," together with others, for the

purpose of maintaining and increasing position in the Bloods, an enterprise engaged in

racketeering activity, did knowingly and intentionally assault with a dangerous weapon, to

wit: a firearm, John Doe #2, in violation of New York Penal Law Sections 120.05(2) and

20.00.

(Title 18, United States Code, Sections 1959(a)(3), 2 and 3551 et seq.)

## COUNT SEVEN
(Discharging a Firearm During Crimes of Violence:
Attempted Murder and Assault with a Dangerous Weapon of John Doe #2)

28.     On or about March 11, 2016, within the Eastern District of New York,

the defendant TYSAAN ROBINSON, also known as "Cream," together with others, did

knowingly and intentionally use and carry a firearm during and in relation to one or more

crimes of violence, to wit: the crimes charged in Count Five and Count Six, and did

knowingly and intentionally possess said firearm in furtherance of such crimes of violence,

which firearm was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii),

924(c)(1)(A)(iii), 2 and 3551 et seq.)

### COUNT EIGHT
(Attempted Murder and Attempted Assault with a Dangerous Weapon of John Doe #3)

29.     The allegations contained in paragraphs 20 and 21 are realleged and

incorporated as if fully set forth in this paragraph.

30.     On or about April 30, 2016, within the Eastern District of New York,

the defendants JERMAINE GREEN, also known as "730," and TYSAAN ROBINSON, also

known as "Cream," together with others, for the purpose of maintaining and increasing

position in the Bloods, an enterprise engaged in racketeering activity, did knowingly and

intentionally attempt to murder and assault with a dangerous weapon, to wit: a firearm, John

Doe #3, in violation of New York Penal Law Sections 125.25(1), 120.05(2), 110.00 and

20.00.

(Title 18, United States Code, Sections 1959(a)(5), 1959(a)(6), 2 and

3551 et seq.)

### COUNT NINE
(Discharging a Firearm During Crimes of Violence:
Attempted Murder and Attempted Assault with a Dangerous Weapon of John Doe #3)

31.     On or about April 30, 2016, within the Eastern District of New York,

the defendants JERMAINE GREEN, also known as "730," and TYSAAN ROBINSON, also

known as "Cream," together with others, did knowingly and intentionally use and carry a

12

firearm during and in relation to crimes of violence, to wit: the crimes charged in Count

Eight, and did knowingly and intentionally possess said firearm in furtherance of such crimes

of violence, which firearm was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii),

924(c)(1)(A)(iii), 924(c)(1)(C)(1), 2 and 3551 et seq.)

## COUNT TEN
### (Hobbs Act Robbery Conspiracy)

32.     On or about and between December 3, 2016 and December 5, 2016,

both dates being approximate and inclusive, within the Eastern District of New York and

elsewhere, the defendants ALLAZEEM CARTER, also known as "Green" and "Money,"

TYSHAWN JACKSON, also known as "Dollas" and "Ty Dollas," DONALDSON JOSEPH,

also known as "Tweez," and DAQUAN WAGNER, also known as "Studda B," together with

others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and

the movement of articles and commodities in commerce, by robbery, to wit: the robbery of

Drug Dealer #1 in Uniondale, New York, through the use of actual and threatened force,

physical violence and fear of injury to such person.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

## COUNT ELEVEN
### (Attempted Hobbs Act Robbery)

33.     On or about December 5, 2016, within the Eastern District of New

York, the defendants ALLAZEEM CARTER, also known as "Green" and "Money,"

TYSHAWN JACKSON, also known as "Dollas" and "Ty Dollas," DONALDSON JOSEPH,

also known as "Tweez," and DAQUAN WAGNER, also known as "Studda B," together with

13

others, did knowingly and intentionally attempt to obstruct, delay and affect commerce, and

the movement of articles and commodities in commerce, by robbery, to wit: the robbery of

Drug Dealer #1 in Uniondale, New York, through the use of actual and threatened force,

physical violence and fear of injury to such person.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT TWELVE
(Possessing Firearms During Crimes of Violence:
Hobbs Act Robbery Conspiracy and Attempted Robbery)

34.     On or about and between December 4, 2016 and December 5, 2016,

both dates being approximate and inclusive, within the Eastern District of New York, the

defendants ALLAZEEM CARTER, also known as "Green" and "Money," TYSHAWN

JACKSON, also known as "Dollas" and "Ty Dollas," DONALDSON JOSEPH, also known

as "Tweez," and DAQUAN WAGNER, also known as "Studda B," together with others, did

knowingly and intentionally use and carry one or more firearms during and in relation to one

or more crimes of violence, to wit: the crimes charged in Counts Ten and Eleven, and did

knowingly and intentionally possess said firearms in furtherance of such crimes of violence.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 2 and 3551 et seq.)

## COUNT THIRTEEN
(Conspiracy to Murder and Assault Rival Gang Members with Dangerous Weapons)

35.     The allegations contained in paragraphs 20 and 21 are realleged and

incorporated as if fully set forth in this paragraph.

36.     In or about and between January 2008 and the date of this Superseding

Indictment, both dates being approximate and inclusive, within the Eastern District of New

York and elsewhere, the defendants ALLAZEEM CARTER, also known as "Green" and

"Money," JERMAINE GREEN, also known as "730," JOHNNY GREEN, also known as "Snacks," TYSAAN ROBINSON, also known as "Cream," and DAQUAN WAGNER, also known as "Studda B," together with others, for the purpose of maintaining and increasing position in the Bloods, an enterprise engaged in racketeering activity, did knowingly and intentionally conspire to murder and assault with dangerous weapons, to wit: firearms, members and associates of rival gangs, including the Crips, in violation of New York Penal Law Sections 125.25(1), 105.15, 120.05(2) and 105.05.

(Title 18, United States Code, Sections 1959(a)(5), 1959(a)(6) and 3551 et seq.)

## COUNT FOURTEEN
(Conspiracy to Distribute Controlled Substances)

37.     On or about and between January 1, 2014 and the date of this Superseding Indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ALLAZEEM CARTER, also known as "Green" and "Money," JOHNNY GREEN, also known as "Snacks," TYSHAWN JACKSON, also known as "Dollas" and "Ty Dollas," and TYSAAN ROBINSON, also known as "Cream," together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute one or more controlled substances, which offense involved (a) a substance containing cocaine base, a Schedule II controlled substance, (b) a substance containing heroin, a Schedule I controlled substance, and (c) a substance containing marijuana, a Schedule I controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).  The amount of cocaine base involved in the conspiracy attributable to the defendants as a result of their own conduct, and the conduct of

15

other coconspirators reasonably foreseeable to them, was 280 grams or more of a substance containing cocaine base.

(Title 21, United States Code, Sections 846, 841(b)(1)(A)(iii) and 841(b)(1)(C); Title 18, United States Code, Sections 3551 et seq.)

A TRUE BILL

_____
FOREPERSON

_____
BRIDGET M. ROHDE
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

16

F. # 2017R00376
FORM DBD-34
JUN. 85

No. 17-CR-106 (S-1) (JFB)

# UNITED STATES DISTRICT COURT
## EASTERN *District of* NEW YORK

### CRIMINAL DIVISION
### THE UNITED STATES OF AMERICA
*vs.*

*ALLAZEEM CARTER, also known as "Green" and "Money,"*
*JERMAINE GREEN, also known as "730," JOHNNY GREEN,*
*also known as "Snacks," TYSHAWN JACKSON, also known as*
*"Dollas" and "Ty Dollas," DONALDSON JOSEPH, also known as*
*"Tweez," TYSAAN ROBINSON, also known as "Cream," and*
*DAQUAN WAGNER, also known as "Studda B,",*

Defendants.

# SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii),
924(c)(1)(C)(i), 1951(a), 1959(a)(3), 1959(a)(5), 1959(a)(6), 1962(c),
1962(d), 1963, 2 and 3551 et seq; T. 21, U.S.C., §§
841(b)(1)(A)(iii),841(b)(1)(C), and 846.)

*A true bill.*

_____

*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Michael R. Maffei, Assistant U.S. Attorney (631) 715-7890*

# **EXHIBIT B**

**Office of the Medical Examiner**
Tamara Bloom, M.D., Chief Medical Examiner
2251 Hempstead Turnpike, Building R
East Meadow, NY 11554-1856
*Telephone: 516-572-5153, Fax: 516-572-5099*

**Division of Forensic Services**
Pasquale Buffolino, Ph.D., Laboratory Director
Karen E. Dooling, M.S., Assistant Director
*Telephone: 516-572-5193, Fax: 516-572-5818*
*Email: crimelab_info@nassaucountyny.gov*



April 19, 2016

## FORENSIC BIOLOGY LABORATORY REPORT

**VICTIM:** Maliq Stevenson

**LAB NO:** CL16-0222

**COMMAND:** SIS

**CASE REPORT NO:** 2016CR308551

**SUMMARY OF RESULTS AND INTERPRETATIONS:**

Autosomal STR DNA typing was done on the swab of casings (item 5.1) taken from the casings recovered from YC-1 through YC-10 (items 5-14). A mixture of DNA was found. A minimum of three people must have contributed to this sample. Based on the mixture ratio, no comparisons can be made.

**Y-STR DNA analysis could be performed upon submittal of a DNA sample from the suspect. Further analysis will require approximately 30 days.**

CL16-0222                                                                                    Maliq Stevenson

## TESTING METHODOLOGY:

### Identification of Blood, Semen and Saliva

**Presumptive Test**-A non-confirmatory test used for detecting the possible presence of biological fluids.

**The presence of blood was indicated** is based on a positive presumptive test for blood (such as Kastle-Meyer test) followed by the detection of human (primate) DNA through DNA extraction and quantitation. **Blood was presumptively found** indicates a positive presumptive test for blood only.

Semen has two components: **spermatozoa** (the male reproductive cell) and the seminal plasma (which contains **Prostate Specific Antigen**). Prostate Specific Antigen (PSA) is a protein (also commonly referred to as **P30 antigen**) produced by the prostate gland and found in semen. PSA concentration in semen is typically in levels far in excess of those found in other fluids. **Semen was detected** is based on the identification of spermatozoa *or* the identification of spermatozoa and the detection of PSA by a positive presumptive test (Seratec® PSA Semiquant P30 Test). The identification of spermatozoa is considered a confirmatory test for the detection of semen. **The presence of semen was indicated** is based on the detection of PSA by a positive presumptive test (Seratec® PSA Semiquant P30 Test) without the identification of spermatozoa followed by the detection of human male (primate) DNA through DNA extraction and quantitation. **Semen was presumptively found** is based on the detection of PSA by a positive presumptive test only: Seratec® PSA Semiquant P30 Test and/or Acid Phosphatase test (enzyme abundant in semen) without the identification of spermatozoa.

**The presence of saliva was indicated** is based on a positive presumptive test for the presence of saliva (RSID® Saliva Identification Procedure) followed by detection of human (primate) DNA through DNA extraction and quantitation. **Saliva was presumptively found** is based on a positive presumptive test for the presence of saliva only.

**No blood was detected:** No blood was detected based upon a negative visual examination or a negative presumptive test.

**No semen was detected:** No semen was detected based on a negative visual examination, a negative presumptive test (Seratec® PSA Semiquant P30 Test and/or Acid Phosphatase test) or no spermatozoa being identified and a negative presumptive test.

**No saliva was detected:** No saliva was detected based upon a negative visual examination or a negative presumptive test.

**Visual Examination:** Visual examination of physical evidence which may include use of an alternative light source.

**No biological material was detected:** After visual and/or alternative light source examination, no staining and/or fluorescence was detected.

### DNA Testing General Information

**Deoxyribonucleic Acid (DNA)**, commonly referred to as the inherited genetic material found in most cells, is composed of four chemical structures known as bases that are linked together randomly to form a double stranded chain. These bases are adenine (A), guanine (G), cytosine (C), and thymine (T). The human genome contains approximately three billion of these bases with the majority of this DNA located in a cellular structure known as the nucleus. This form of DNA (Nuclear DNA) is organized into highly condensed structures known as chromosomes. All cells contain 23 pairs of homologous (matching) chromosomes totaling 46, with the exception of sex cells (sperm and egg cells) where chromosomes occur singly (totaling 23). All non sex chromosomes (X or Y) are referred to as autosomes or **autosomal DNA**.

The majority of an individual's DNA (>99%) is identical from person to person. However, the remaining portion differs between individuals and can be used to individualize forensic specimens commonly encountered by forensic laboratories. These specimens include physiological fluids (blood, semen, saliva, etc.) and tissue which contain polymorphic ("many forms") DNA or genetic markers. Within these genetic markers, alternative forms of DNA markers exist called **alleles**. Alleles are found in specific areas or locations of the DNA called **loci** (singular: locus) on homologous chromosomes. An individual can have a maximum of two different DNA alleles at a particular locus. A **DNA profile** refers to the set of alleles detected in a sample during DNA analysis.

**PCR DNA Typing** involves several steps, including DNA extraction, DNA quantitation, PCR (polymerase chain reaction) amplification and analysis of the resulting DNA alleles.

CL16-0222                                                                    Maliq Stevenson

**TESTING METHODOLOGY (continued):**

**DNA extraction** recovers DNA from biological samples (such as blood, semen, skin cells, saliva). **Differential extraction** is used to physically separate the DNA in epithelial cells from the DNA in sperm cells resulting in sample division into fractions. The **epithelial cell fraction** is enriched for DNA from the source of the physical evidence (typically DNA from the victim), the **sperm cell fraction** is enriched for sperm DNA and the **substrate remains/swab remains** is the DNA persisting on the sample after differential extraction. It is not always a complete separation; it is possible for sperm DNA to be present in the epithelial cell fraction or epithelial cell DNA to be present in the sperm cell fraction.

**DNA quantitation** measures the amount of DNA extracted from samples using a method called quantitative real time PCR. The Quantifiler Duo assay is designed to simultaneously quantify the total amount of amplifiable human DNA and human male DNA in a sample. If sufficient DNA is detected, DNA amplification can be attempted.

**PCR Amplification** utilizes the PCR (polymerase chain reaction) technique to reliably replicate thousands of copies of a specific DNA sequence from small amounts of DNA and is extremely useful in the analysis of forensic specimens. A **DNA Amplification Kit** is a commercial product used to generate a DNA profile.

**DNA Analysis: Autosomal STR (short tandem repeat)** loci exhibit length polymorphisms, which are variations in the number of core repeats that are generally 4 base pairs in length. The **DNA profile** is represented as a series of numbers representing the number of core repeats for each allele at all STR loci tested. The loci tested may include the short tandem repeat (STR) loci: D8S1179, D21S11, D7S820, CSF1PO, D3S1358, TH01, D13S317, D16S539, D2S1338, D19S433, vWA, TPOX, D18S51, D5S818 and FGA. Each locus has between 8 and 28 identifiable alleles. The loci tested may also include the Amelogenin locus, which is located on the chromosomes X and Y, and can be used to determine the sex origin of an unknown sample.

**Y-STR DNA Analysis:** Another set of polymorphic loci that can be tested are STRs located on the Y chromosome. These male-specific loci include DYS456, DYS389I, DYS390, DYS389II, DYS458, DYS19, DYS385 a/b, DYS393, DYS391, DYS439, DYS635, DYS392, Y GATA H4, DYS437, DYS438, and DYS448. The Y-STR loci exhibit length polymorphisms, which are variations in the number of core repeats, generally 3-6 base pairs in length for the Y loci. Y-STR alleles are named according to the number of core repeats present at each locus. Each locus has between 5 and 19 identifiable alleles for the Y loci.

**A mixture of DNA** is a DNA profile that has more than one donor. Alleles that are present in a higher proportion in a DNA mixture profile are referred to as the **major contributor**. Alleles that are present in a lower proportion in a DNA mixture profile are referred to as the **minor contributor**. It is not always possible to determine the major contributor and/or the minor contributor to a mixture of DNA.

**Combined DNA Index Sytem (CODIS)**-A collection of Local (LDIS: Local DNA Index System), State (SDIS: State DNA Index System) and National (NDIS: National DNA Index System) DNA Databases.

<u>**Conclusions for DNA Testing and Statistics**</u>

**Probability**-A measure or estimation of how likely it is that something would occur.

**This combination of DNA alleles would be expected to be found in approximately: (Random Match Probability/RMP)** The probability that a random, unrelated individual from the population has the same DNA profile as the DNA profile observed in the evidence sample. The population frequency (or RMP) is reported as occurring in 1 out of x individuals (i.e. 1/profile frequency).

**Source Attribution:** A DNA profile is considered "unique" within the context of the case (if it only originated from one person, excluding identical twins) if the most common RMP amongst all racial groups calculated is at least as rare as 1 in greater than or equal to 348 billion individuals. (Source attribution threshold is based upon the calculated U.S. Population RMP).

**Is the (male/female) DNA donor/contributor or semen donor:** The DNA profile of an individual or additional evidentiary sample **is the same as** (*all alleles match*) or **consistent with** (*partial profile or partial deduction*) the DNA profile of an evidentiary sample. The population frequency of this DNA profile meets the threshold of 1 in greater than or equal to 348 billion individuals.

CL16-0222                                                                      Maliq Stevenson

**TESTING METHODOLOGY (continued):**

**Could be the (male/female) DNA donor/contributor or semen donor:** The DNA profile of an individual or additional evidentiary sample **is the same as** (*all alleles match*) or **consistent with** (*partial profile or partial deduction*) the DNA profile of an evidentiary sample. The population frequency of this DNA profile does not meet the threshold of 1 in greater than or equal to 348 billion individuals.

**Is the major/minor contributor or semen donor to the mixture:** The DNA profile of an individual or additional evidentiary sample **is the same as** (*all alleles match*) or **consistent with** (*partial profile or partial deduction*) the major/minor contributor or semen donor DNA profile determined from a mixture of DNA. The population frequency of this DNA profile meets the threshold of 1 in greater than or equal to 348 billion individuals.

**Could be the major/minor contributor or semen donor to the mixture:** The DNA profile of an individual or additional evidentiary sample **is the same as** (*all alleles match*) or **consistent with** (*partial profile or partial deduction*) the major/minor contributor or semen donor DNA profile determined from a mixture of DNA. The population frequency of this DNA profile does not meet the threshold of 1 in greater than or equal to 348 billion individuals.

**The probability of inclusion or the proportion of the population included in this mixture is approximately: (Combined Probability of Inclusion)** The probability that a random, unrelated individual from the population would be included as a contributor to the observed mixture of DNA in the evidence sample.

**Could be included as a contributor to the mixture:** The DNA alleles seen in an individual's DNA profile or additional evidentiary sample **are consistent with** the DNA alleles observed in a mixture of DNA (where no major/minor contributor or semen donor could be deduced) for locations where comparisons could be made.

**This combination of Y-STR DNA alleles would be expected to be found in approximately: (Y-STR statistics)** An estimate of the frequency of occurrence of a particular haplotype (Y-STR profile) which is based upon how many times this haplotype is observed in a particular database.

**This combination of DNA alleles and Y-STR DNA alleles would be expected to be found in approximately: (Combined Random Match Probability and Y-STR Statistics)** The combined autosomal and Y-STR match probability was calculated by multiplying the autosomal genotype match probability and Y-STR profile probability if the autosomal match probability does not meet the threshold of 1 in greater than or equal to 348 billion individuals. The probability that a random, unrelated individual from the population has the same DNA profile as the DNA profile observed in the evidence sample.

**Can be excluded as the (male/female) DNA donor/contributor, semen donor or major/minor contributor:** The DNA profile of an individual or evidentiary sample **is not the same as** (*all alleles do not match*) or **is not consistent with** (*partial profile or partial deduction*) the male/female DNA donor/contributor, semen donor or major/minor contributor DNA profile.

**Can be excluded as a contributor to the mixture:** The DNA alleles seen in an individual's DNA profile or additional evidentiary sample **are not consistent with** the DNA alleles observed in a mixture of DNA (where no major/minor contributor or semen donor could be deduced) for locations where comparisons could be made.

**No comparisons can be made:** The DNA profile from the evidence is a limited genetic profile, the evidentiary mixture is either too complex ($\geq$ four contributors) or a statistical qualification could not be made due to the mixture ratio; therefore, the results are considered not suitable for comparisons and no comparisons (inclusions or exclusions) can be made.

**Insufficient quantities of human DNA (or human DNA and human male DNA) were detected:** Based on quantitation, there is an insufficient amount of human DNA (or human DNA and human male DNA) to perform DNA testing.

**No human DNA was detected:** Based on quantitation, there is no human DNA detected in that sample.

**No male DNA was detected:** Based on quantitation, there is no human male DNA detected in that sample.

4 of 6

CL16-0222                                                          Maliq Stevenson

Autosomal DNA typing was done with the following results:

| ITEM | D8S1179 | D21S11 | D7S820 | CSF1PO | D3S1358 | TH01 | D13S317 | D16S539 | D2S1338 | D19S433 | vWA | TPOX | D18S51 | AMEL | D5S818 | FGA |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5.1- swab of casings | 11, 13, 14, 15** | 27, 28** | 10, 11** | 12** | 14, 15, 16, 17 | 6, 7, 9, 9.3 | 9, 11, 12, 13, 14 | 10, 11, 12, 13** | 18** | 13, 14, 15, 17.2 | 14, 15, 16, 17, 18** | 6, 8, 9** | 13, 15, 19** | X, Y | 10, 11, 12, 13 | 21, 23, 24** |

** = Additional peaks were detected which did not meet laboratory criteria for allele identification; therefore, these additional peaks are not reported.

A person can have a maximum of two DNA alleles at a given DNA locus. Since more than two DNA alleles were seen in at least one DNA locus, a mixture of DNA is present in the swab of casings (item 5.1) taken from the casings recovered from YC-1 through YC-10 (items 5-14). A minimum of three people must have contributed to this sample. Based on the mixture ratio, no comparisons can be made.

CL16-0222                                                                    Maliq Stevenson

**EVIDENCE RECEIVED:**

**VOUCHER:** L16001281

| ITEM | DATE REC'D | DESCRIPTION |
|------|-----------|-------------|
| 5 | 03/30/16 | casing recovered from YC-1 |
| 6 | " | casing recovered from YC-2 |
| 7 | " | casing recovered from YC-3 |
| 8 | " | casing recovered from YC-4 |
| 9 | " | casing recovered from YC-5 |
| 10 | " | casing recovered from YC-6 |
| 11 | " | casing recovered from YC-7 |
| 12 | " | casing recovered from YC-8 |
| 13 | " | casing recovered from YC-9 |
| 14 | " | casing recovered from YC-10 |

**DISPOSITION:**

The following items will be retained in the laboratory:

- swab 5.1
- DNA extracts for all samples and controls tested

The remainder of the evidence has been returned to the Nassau County Police Department Evidence Management Unit.

The results detailed in this report are supported by testing documentation. The original supporting documentation is available for review.

Analyst: _Christopher Chillseyzn_          Technical Review: _Daniel Arana_

Christopher Chillseyzn                                 Daniel Arana, M.S.
Forensic Geneticist I                                  Forensic Geneticist II

6 of 6